UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CALVIN ROUSE AKA ABDUR RASHID KHALIF,<br><br>        Plaintiff,<br><br>    v.<br><br>ELDON VAIL,<br><br>        Defendant. | No. 08-5620FDB/JRC<br><br>REPORT AND RECOMMENDATION<br><br>NOTED FOR:<br>April 9, 2010 |

This Civil Rights action has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636 (b) (1) (A) and 636 (b) (1) (B) and Local Magistrate Judges' Rules MJR 1, MJR 3, and MJR 4 (Dkt. # 4). Defendant has moved for summary judgment, (Dkt. #54), and plaintiff filed a motion for a temporary restraining order five days later, but did not respond to the motion for summary judgment (Dkt. # 55). This Report and Recommendation addresses only the motion for summary judgment.

Report and Recommendation- 1

This case involves plaintiff's complaint that the Washington Department of Corrections fails to use plaintiff's legal name on prisoner records and continues to use plaintiff's former legal name, allegedly, in violation of his federal rights.

The court recommends that the motion be GRANTED as to all issues because plaintiff failed to exhaust his administrative remedies on all but two of the issues raised, and for the remaining two issues, plaintiff has not contested defendant's assertion that there are valid penological reasons for using defendant's committed names.

## FACTS

In 1997, prior to his current conviction, plaintiff legally changed his name to Abdur Rashid Kahlif.  In 2001, plaintiff was arrested on new charges and the finger print analysis disclosed this person had prior convictions under the name Calvin Rouse.  Plaintiff was charged and convicted using the prior name.  The decision by the prosecutor and state court to use that name is not part of this action.

Prison policy mandates that an inmate use his committed name on all outgoing correspondence and that incoming correspondence also have the committed name on it.  An inmate who has legally changed his name may use the new legal name after the committed name by placing an AKA (Also Known As) designation before the legal name.  (Dkt. # 54, Exhibit 1, Attachment A (DOC Policy 400.280, page 2of 3)).  The plaintiff complains that mail addressed using only his legal name was not delivered or mailed out.  He also complains because prison officials would not issue him prison identification in only his legal name.

Plaintiff has filed a large number of grievances, but he has only exhausted the prison grievance system on two of the issues in this action.  The two exhausted issues are rejection of

Report and Recommendation- 2

mail that is not addressed in his committed name and failure to change the name on his prison identification badge.

Defendant argues that there are valid penological reasons requiring use of the committed name on all mail, outgoing and incoming, and there are also valid penological reasons for having the name on the identification badge being the committed name, and not the legal name or both the legal and committed name (Dkt. # 54).

## STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985).

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). See also Fed. R. Civ. P. 56 (e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626, 630 (9th Cir. 1987).

Report and Recommendation- 3

The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial, e.g. the preponderance of the evidence in most civil cases. Anderson, 477 U.S. at 254; T.W. Elec. Service Inc., 809 F.2d at 630. The court must resolve any factual dispute or controversy in favor of the nonmoving party only when the facts specifically attested by the party contradict facts specifically attested by the moving party. Id. Conclusory, nonspecific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." Lujan v. National Wildlife Federation, 497 U.S. 871, 888-89 (1990).

## DISCUSSION

A.   *Exhaustion of Administrative Remedies.*

The burden of pleading and proving failure to exhaust administrative remedies in the civil rights context is normally defendants. Defendant has placed grievances before the court and defendant shows that issues related to copying outgoing mail, "spying", and unspecific allegations regarding religious rights and the application of DOC Policy 400.280 have not been exhausted through the prison grievance system. The Prison Litigation Reform Act ("PLRA") requires exhaustion of administrative remedies prior to filing a complaint in federal court. The relevant portion of the act states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e (a).

Because plaintiff is incarcerated the act applies to plaintiff. The United States Supreme Court determined that Congress enacted the provision in order to reduce the quantity and improve the quality of prisoner suits. Porter v. Nussle, 534 U.S. 516 (2002). By mandating exhaustion, Congress enabled corrections officials to address prisoner complaints internally.

Report and Recommendation- 4

Where exhaustion was once discretionary, it is now mandatory. "All 'available' remedies must now be exhausted; those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'" Porter v. Nussle, 534 U.S. 516 (2002) (quoting Booth v. Churner, 532 U.S. 731, 739 (2001)). The Porter Court ruled that "§ 1997e (a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." Porter, 534 U.S. at 520.

Plaintiff has failed to exhaust available remedies for the issues listed above prior to filing this action. Accordingly, these issues should be **DISMISSED WITHOUT PREJUDICE**.

B.   *Exhausted Issues, mail and identification badges*.

The Ninth Circuit in Malik v. Brown, extensively addressed the remaining issues now before this court. Malik v. Brown, 16 F.3d 330 (9th Cir. 1994), *mandate recalled*, 65 F.3d 148 (9th Cir. 1995), *appeal after remand*, 71 F.3d 724 (9th Cir. 1995). The court stated:

> For at least 16 years, federal courts have been wrestling with inmates' use of religious names. The cases have consistently supported three propositions. First, an inmate has a First Amendment interest in using his religious name, at least in conjunction with his committed name. *See, e.g.*, *Salaam II*, 905 F.2d at 1170*; Felix v. Rolan*, 833 F.2d 517, 518 (5th Cir.1987); *Barrett v. Virginia*, 689 F.2d 498 (4th Cir.1982). Second, an inmate cannot compel a prison to reorganize its filing system to reflect the new name. *See, e.g., Barrett*, 689 F.2d at 503; *Akbar v. Canney*, 634 F.2d 339, 340 (6th Cir.1980), cert. denied, 450 U.S. 1002, 101 S.Ct. 1712, 68 L.Ed.2d 205 (1981). Third, in states where inmates are allowed to change names legally, prisons are generally required to recognize only legally changed names. *See, e.g.*, *Rahman v. Stephenson*, 626 F.Supp. 886 (W.D.Tenn.1986); *Salahuddin v. Coughlin*, 591 F.Supp. 353 (S.D.N.Y.1984). Several of these opinions address, at least indirectly, the topic of inmate mail.
>
> . . .
>
> In 1986, the Seventh Circuit generally addressed religious name changes by inmates, and specifically addressed whether prison officials were immune from liability for having refused to recognize an inmate's legal name change. *Azeez v. Fairman*, 795 F.2d 1296, 1301-02 (7th Cir.1986). The majority assumed without discussion that *Azeez's* First Amendment rights were violated by the prison authorities' failure to acknowledge his religious name. *See id.* at 1299. The court held, however, that at the time of the violations in 1981, the law had not clearly established inmates' rights to recognition of religious names. Id.

Report and Recommendation- 5

The district court opinion in *Azeez* was also published and concludes that the "a/k/a" designation is "a reasonable middle ground between absolute recognition of the plaintiff's Muslim names and the prison interests of order, security and administrative efficiency." *Azeez v. Fairman*, 604 F.Supp. 357, 364 (C.D.Ill.1985).

In 1987, the Fifth Circuit recognized that "[t]he adoption of Muslim names by inmates practicing that religion is generally recognized to be an exercise of both first amendment speech and religious freedom." *Felix*, 833 F.2d at 518.

Most of these cases involved the application of the *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974) standard for deciding the constitutionality of prison regulations. In *Procunier*, the Supreme Court held that a prison restriction on inmates' First Amendment rights could be justified only if it "further[s] an important or substantial governmental interest unrelated to the suppression of expression," and the limitation is "no greater than is necessary or essential to the protection of the particular governmental interest involved." *Id.* at 413, 94 S.Ct. at 1811. In 1986, the Supreme Court modified this standard by holding that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). The standard is judged by four considerations: (1) whether there is "a valid, rational connection between the prison regulation and the legitimate government interest put forward to justify it"; (2) whether inmates have alternative available means of practicing their religion; (3) the impact of accommodation on the prison; and (4) the existence of "obvious, easy alternatives" to the regulation. *Malik* I, 16 F.3d at 334 (quoting *Turner*, 482 U.S. at 89, 107 S.Ct. at 2262); see also *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987) ("prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than ordinarily applied to alleged infringements of fundamental constitutional rights.").

. . .

Two post- *Turner* cases address issues closely related to ours. In *Salaam v. Lockhart*, 856 F.2d 1120, 1123 & n. 1 (8th Cir.1988) (*Salaam I*) the Eighth Circuit considered the rights of inmates to have their new names on their uniforms and on incoming mail. The court noted that the "a/k/a designation" is a well-recognized, reasonable alternative to prisons' committed name policies.. . .

These cases demonstrate that prisons are required to take simple measures to accommodate prisoners' First Amendment rights. Allowing a prisoner to put his religious name next to his committed name on outgoing mail is an "obvious, easy" accommodation. *See Malik I*, 16 F.3d at 334. It is simpler than delivering incoming mail addressed to the prisoner by his religious name or

Report and Recommendation- 6

> putting the prisoner's religious name on his name tag or clothing, as *Salaam II*, 905 F.2d at 1170, required. The burden on the prison is so small that in *Malik I* we found that there was no legitimate penological interest in preventing use of the religious name with the committed name on outgoing mail. 16 F.3d at 334.
> Because the issue of religious name changes has been litigated extensively and courts have consistently recognized an inmate's First Amendment interest in using his new, legal name (at least in conjunction with his committed name), we find that the law was clearly established in the absence of binding Ninth Circuit precedent.

Malik v. Brown, 71 F.3d 724, 727- 729 (9th Cir. 1995)(footnotes omitted).  The law in this area recognizes that the parties need to mutually accommodate each other.  Courts have recognized the use of the committed name and then the AKA designation followed by the legal name as such an accommodation.

      A.      Incoming correspondence.

There is pre-1987 case law supporting the propositions that incoming mail addressed in only the legal or religious name needs to be delivered.  However, the 1987 change in the legal standard weakens the authority of this line of cases.  Turner v. Safley, 482 U.S. 78, (1987). Defendants argue that valid penological goals are furthered by requiring the committed name be on incoming mail.  The court notes that given the goals of security and prevention of contraband from entering the facility, there are obvious legitimate goals in have the inmates committed name on incoming correspondence. These goals include allowing prison officials to utilize their records system and quickly associate incoming mail with a committed felon.  Allowing the use of the religious or legal name after the committed name using an AKA designation is an easy accommodation that is allowed under DOC policy.  In light of the 1987 change to the legal standard, defendants are entitled to summary judgment on this issue.

Report and Recommendation- 7

     B.     Outgoing correspondence.

In Procunier v. Martinez, 416 U.S. 396 (1974), the court addressed outgoing mail that contained unflattering comments regarding prison officials and the running of the facility. Thus, the court was addressing content censorship. Here, in contrast, it is only the manner in which plaintiff identifies himself and not the content of his correspondence that is at issue. Defendant argues that forcing an inmate to use his committed name helps insure that inmates are not "misrepresenting themselves to the public." Defendant argues this helps deter criminal acts by the 100 % felon prison population (Dkt. # 54, page 13). Further, the policy again allows for use of the legal or religious name after the committed name using an AKA designation. Plaintiff has not contradicted or responded to this argument. Defendant is entitled to summary judgment.

The Court notes that plaintiff has attempted to modify the policy by using his legal name first, and then a FKA (Formerly Known As) designation with his committed name. *See*, (Dkt. # 51 and 55). That is not the accommodation allowed by prison officials or recognized by the courts. For ease in handling and quick identification, the committed name should appear first, then the AKA designation, then the legal name.

     C.     Prison identification badges.

Plaintiff complains because prison officials would not issue him a badge using only his legal name (Dkt. # 4, page 3). The second well established proposition is that an inmate cannot force prison official to change their record keeping practices. Malik v. Brown, 71 F.3d 724, 727 (9th Cir. 1995). Plaintiff's central file is kept under his committed name. Having the committed name on the identification badge fulfills obvious goals relating to being able to readily identify the inmate with the name used by prison officials. Further, plaintiff did not respond to defendants' argument, raising the presumption that defendant's motion is valid. Local Rule 7

Report and Recommendation- 8

(b) (2) in pertinent part states that failure "to file papers in opposition to a motion… may be considered by the court as an admission that the motion has merit."

Defendant also argues that there are valid penological objectives served by not allowing both the committed name and legal name on the badge (Dkt. # 54).  That issue is not before the court today.

D. Qualified immunity.

The only remaining defendant was Eldon Vail in his official capacity.  There is no damage claim and only a claim for injunctive relief.  The doctrine of qualified immunity does not cover a state official in their official capacity and will not be addressed further.

## CONCLUSION

Unexhausted issues should be DISMISSED WITHOUT PREJUDICE.  Exhausted issues should be DISMISSED WITH PREJUDICE for the reasons stated above.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed.R.Civ.P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on April 9, 2010, as noted in the caption.

Dated this 8th day of March, 2010.

J. Richard Creatura
United States Magistrate Judge

Report and Recommendation- 9